IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BORDEAUX CAPITAL INC.,

    Plaintiff,

v.    CIVIL ACTION NO. 2:18-cv-01262

UNITED STATES METHANOL CORPORATION, et al.,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bordeaux Capital, Inc. ("BCI") brings this action against Defendants United States Methanol Corporation ("USM Corp."), U.S. Methanol, LLC ("USM LLC"), and Petrochemical Holdings Corporation ("PHC") (collectively, "Defendants"). Before the Court is USM LLC's Motion to Dismiss Counts IV and V of the Complaint. (ECF No. 9.) For the reasons discussed herein, the Court **DENIES** the motion.

*I. BACKGROUND*

The following facts are drawn from the Complaint and, for purposes of resolving the pending motion, are presumed to be true. In November of 2015, USM Corp. retained BCI to perform investment banking services in connection with USM Corp.'s acquisition, relocation, and operation of methanol plants from Brazil and Slovenia to West Virginia (the "Project"). (ECF No. 1 at 3 ¶ 12.) On January 13, 2016, USM Corp. executed a formal engagement letter (the "Engagement Letter") with BCI, obligating "USM Corp. and its successors" to compensate BCI for its "services in connection with the Project." (*Id.* ¶ 13.)

As a result of BCI's work under the Engagement Letter, KKCG made "an equity investment in, and a capital commitment to, USM Corp. . . . or a company related to or affiliated with" USM Corp. (*Id.* at 5 ¶ 18.) On February 6, 2016, USM Corp. and KKCG entered into an equity term sheet "that contemplated USM Corp. and KKCG forming a 'special purpose entity'" to fulfill the Project. (*Id.* ¶ 19.) KKCG is believed to have closed on its equity investment on or about February 26, 2016. (*Id.* ¶ 20.)

Thereafter, USM LLC registered in the State of Delaware as a limited liability corporation and, later, in West Virginia as a foreign corporation, also doing business as "US Methanol." (*Id.* ¶ 21.) On the same day, KKCG registered with the West Virginia Secretary of State's Office as the manager of USM LLC and listed the same business address as USM LLC. (*Id.* ¶ 22.) "KKCG instructed BCI to use 'a new entity, US Methanol LLC (Delaware)'" as a "prospective contracting party" but, otherwise, "did not explain the relationship between USM LLC and USM Corp." (*Id.* at 7 ¶ 32.) Despite the apparent creation of a new entity, no distinction was drawn between USM Corp. and USM LLC. (*Id.* at 8 ¶ 35.)

On March 11, 2016, BCI issued an invoice to USM Corp. for its services. (*Id.* at 5 ¶ 23.) USM Corp. made partial payments on the invoice. (*Id.* at 8 ¶¶ 37, 39.) However, the CEO of both USM Corp. and USM LLC continued to use BCI's services under the Engagement Letter, and, accordingly, BCI performed its obligations entitling it to additional payment under the agreement. (*Id.* at 7 ¶ 31.) On September 6, 2017, KKCG and/or USM LLC notified BCI that they no longer required its services and terminated the Engagement Letter. Nonetheless, they did not dispute the March 2016 invoice and additional fees and assured that outstanding amounts owed would be paid. (*Id.* at 9 ¶ 41.) Later, when BCI inquired into the outstanding payments, USM

LLC instructed BCI "that [its] only recourse was against USM Corp., which by that time was nothing more than a shell company." (*Id.* at 2 ¶ 9.)

Based on these alleged facts, BSI contends that "USM Corp. and USM LLC secretly and intentionally conspired to, and did, arrange their affairs so that all or substantially all of USM Corp.'s assets, including its intellectual property, business plan, bids, rights, employees, prospects and opportunities, including the Project, were transferred from USM Corp. (or PHC) to USM LLC (the 'Secret Agreement') for less than fair value, with the intention of leaving USM Corp. (now PHC) a shell company." (*Id.* at 6 ¶ 24.) BCI asserts five causes of action against Defendants for breach of contract, unjust enrichment, quantum meruit, intentional tort/fraud, and violation of the West Virginia Uniform Voidable Transactions Act, W. Va. Code § 40–1A–1, *et. seq.* ("WVUVTA"), (*id.* at 9–14 ¶¶ 43–62), for which it seeks compensatory and punitive damages, pre- and post-judgment interest, attorney fees and costs, and any other relief justified, (*id.* at 15).

USM LLC filed its Motion to Dismiss on September 27, 2018, arguing that Counts IV and V of the Complaint should be dismissed because Count IV fails to plead fraud with specificity and Count V under the WVUVTA does not identify a transaction covered by the Act. (ECF No. 9.) BCI responded to the motion on October 26, 2018. (ECF No. 14.) USM LLC did not file a reply in support of their motion. As the time period for filing a reply has elapsed, the Motion to Dismiss is ripe for adjudication.

## II. LEGAL STANDARD

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement

exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). To withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

In evaluating the sufficiency of a complaint, the Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id*. Review of the complaint is "a context-specific task that requires [the Court] to draw on its judicial experience and common sense." *Id*. "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than

4

the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

## III. DISCUSSION

USM LLC challenges Counts IV and V of BCI's Complaint. First, it argues that Count IV, alleging fraud, must be dismissed because BCI's claim is not alleged with specificity as to "the time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation and what he obtained thereby." (ECF No. 10 at 2 (citing *McCauley v. Home Loan Inv. Bank F. S.B.*, 710 F.3d 551, 559 (4th Cir. 2013) (internal quotation omitted)).) USM LLC further argues that Count V, asserting a violation of the WVUVTA cannot survive Rule 12(b)(6) scrutiny because the Complaint does not identify a transaction covered under the Act.

### A. Count IV: Fraud

Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading standard for claims grounded in fraud. *See United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455–56 (4th Cir. 2013). To satisfy Rule 9(b), allegations of fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This heightened standard requires the complaint to describe at a minimum, "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)) (internal quotations omitted). Even so, "[a] court should hesitate to dismiss a complaint under Rule 9(b)" if the allegations of fraud are specific enough to give the defendant notice "of the particular circumstances for which [it] will have to

prepare a defense at trial" and the "plaintiff has substantial prediscovery evidence of those facts." *Harrison*, 176 F.3d at 784.

Courts have found that the specificity requirements of Rule 9(b) are relaxed in fraudulent omission cases. *See In Town Hotels Ltd. P'ship v. Marriott Intern., Inc.*, 246 F.Supp.2d 469, 487 (S.D. W. Va. 2003) (stating "that when the allegation of fraud relates to an omission rather than an affirmative misrepresentation, less particularity is required."); *see also Fravel v. Ford Motor Co.*, 973 F.Supp.2d 651, 656 (W.D. Va. 2013) (recognizing that "a number of courts have held that Rule 9(b)'s particularity requirements are less formulaic with fraud claims based on omissions of material fact."). In such cases, "a plaintiff cannot be required to identify (or suffer dismissal) the precise time, place, and content of an event that (by definition) did not occur[.]" *Belville v. Ford Motor Co.*, 60 F.Supp.3d 690, 697 (S.D. W. Va. 2014) (internal quotation omitted). *See also Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC*, 929 F.Supp.2d 502, 533 (D. Md. 2013) (noting that "an omission 'cannot be described in terms of the time, place, and contents of the misrepresentation'" (quoting *Shaw v. Brown & Williamson Tobacco Corp.*, 973 F.Supp. 539, 552 (D. Md. 1997))). Similarly, Rule 9(b) is applied more leniently when the facts underlying the fraud-based claim are exclusively within the knowledge or control of the defendant. *See Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2nd Cir. 1990); *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988).

In its fraud count, BCI alleges that Defendants fraudulently conveyed "assets, individuals, and opportunities from USM Corp. to USM LLC" to evade their contractual obligations under the Engagement Letter. (*See* ECF No. 1 at 11–12 ¶¶ 51–55.) USM LLC's contention that BCI's allegations are conclusory and lack specificity likened to the "who, what, when, where, how of the

6

alleged fraud" is unavailing. *Wilson*, 525 F.3d at 379. First, BCI explicitly pleads what was concealed—the conveyance of "USM Corp.'s assets, including its intellectual property, business plan, bids, rights, employees, prospects and opportunities" to USM LLC. (ECF No. 1 at 6, 11–12 ¶ 24, 52.) BCI also alleges that this information was concealed to avoid payment owed to BCI under the Engagement Letter, (*id.* at 11 ¶ 52), and that Defendants made this conveyance through communications and meetings at times and places unknown to BCI, (*id.* ¶ 52(e)). The Complaint goes on to state that Defendants never advised BCI of the transfer and did not draw any distinction between the entities. (*Id.* at 8, 11 ¶¶ 35, 52(c)–(d).) The Complaint further details that these entities shared one CEO, webpage, office space, email address domain, and targeted, acquired, and operated the same methanol plants "knowing that they would mislead [BCI]." (*Id.* at 6–8 ¶¶ 25, 27, 28, 35.) The Court is satisfied that these circumstances are pled with enough specificity to notify Defendants of the nature of the fraud-based claim. Accordingly, Count IV survives against USM LLC.

  *B. Count V: Violation of West Virginia Uniform Voidable Transactions Act*

  BCI alleges that Defendants engaged in a scheme in violation of the WVUVTA. The WVUVTA provides grounds upon which a transfer made or an obligation incurred by a debtor may be deemed fraudulent as to the creditor. *See Sheehan v. Saoud*, 650 Fed. App'x 143, 153 (4th Cir. May 24, 2016). Specifically, West Virginia Code § 40–1A–4(a), provides the following:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor: (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) Intended to incur, or believed or

7

> reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

A "transfer" is defined, in relevant part, as "disposing of or parting with an asset or an interest in an asset . . . ." W. Va. Code § 40–1A–1(p). An "asset" means "property of a debtor" with the exclusion of certain property not relevant here. *Id.* at § 40–1A–1(b). Further, a "claim" under the Act means "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." *Id.* at § 40–1A–1(c).

USM LLC contends that BCI's claims are not covered under the WVUVTA because it does not identify a transaction in which USM LLC either made a fraudulent transfer or fraudulently incurred an obligation. BCI's Complaint alleges that BCI provided financial advisory services to Defendants, pursuant to the Engagement Letter, for which it is entitled to compensation. (*See* ECF No. 1 at ¶¶ 7, 12–19, 23, 36, 41.) Specifically, the Complaint alleges that BCI invoiced USM Corp. $677,521.77 for work performed from November 2015 through February 2016. (*Id.* at 5–6 ¶ 23.) Additionally, BCI seeks an equity fee of $1.2 million, pursuant to the Engagement Letter, for KKCG's investment commitment in "US Methanol." (*Id.* at 8 ¶ 36.) BCI alleges that USM LLC is a successor of USM Corp. and is liable for all of USM Corp.'s obligations under the Engagement Letter. (*Id.* at 7 ¶ 30.) BCI further provides that these payments, which USM LLC does not dispute, remain outstanding. (*Id.* at 9 ¶ 41.) Taken as a whole, these facts adequately establish that BCI is a creditor entitled to payment from USM LLC for services rendered.

With regard to a transaction, the Complaint alleges that "all or substantially all of USM Corp.'s assents, including its intellectual property, business plan, bids, rights, employees, prospects and opportunities, including the Project were transferred from" USM Corp. to USM

8

LLC. (*Id.* at 6 ¶ 24.) BCI thoroughly alleges that Defendants knowingly, intentionally, deliberately, and fraudulently agreed to this transaction for little or no consideration, (*id.* at 13–14 ¶ 59), and that the predominate purpose of this conveyance was to deprive BCI of compensation under the Engagement Letter and thereby enrich Defendants, (*id.* at 14 ¶ 59(e)). Contrary to USM LLC's assertion, these alleged events are exactly what the WVUVTA was designed to address. *See Nicholas Loan & Mortg., Inc. v. W. Va. Coal Co-Op, Inc.*, 547 S.E.2d 234, 238 (W. Va. 2001) (recognizing that "[t]he Act was designed to protect unsecured creditors against debtors who make transfers out of, or make obligations against, the debtor's estate in a manner adverse to the creditors' rights."). BCI's allegations offer far more than the "threadbare, formulaic recitation of an element of a [WVUVTA claim]" that Defendants make them out to be. (*See* ECF No. 10 at n.3.) Indeed, these allegations accepted as true more than sufficiently demonstrate a claim under either subdivision of West Virginia Code § 40–1A–4(a).

USM LLC calls attention to several allegations under Count V contending that these averments are unrelated to any covered transaction and do not state a claim for relief under the WVUVTA. In particular, USM LLC cites BCI's allegations that Defendants implemented the plan to transfer assets, that Defendants concealed such transfer and the nature of their corporate and financial structure, and that Defendants conspired to make the alleged transaction. (*See* ECF No. 1 at 13 ¶¶ 59(a), (c)–(d).) While perhaps needlessly repeated in Count V, these allegations directly relate to the alleged covered transaction—the transfer of assets, employees, and opportunities from USM Corp. to USM LLC for little or no consideration with the intent to evade payments owed to BCI. Regardless, a motion to dismiss merely tests the legal sufficiency of a complaint. *See* Fed. R. Civ. P.12(b)(6). The Court has determined above that the challenged

9

Complaint, construed in the light most favorable to BCI, sets forth a "plausible claim for relief" under the WVUVTA. *Iqbal*, 556 U.S. at 678. Thus, the inclusion of these factual averments, whether relevant or not to establishing BCI's claim under the WVUVTA, is inconsequential here. Count V therefore withstands Rule 12(b)(6) scrutiny.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the USM LLC's Motion to Dismiss Counts IV and V of the Complaint. (ECF No. 9.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 10, 2019

_____

THOMAS E. JOHNSTON, CHIEF JUDGE